UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:08-CV-660-H

COMMONWEALTH OF KENTUCKY                                          PLAINTIFF
COMMERCIAL MOBILE RADIO SERVICE
EMERGENCY TELECOMMUNICATIONS
BOARD

V.

TRACFONE WIRELESS, INC.                                          DEFENDANT

## MEMORANDUM OPINION

In this action, the parties dispute the applicability of a Kentucky statute, and its

amendments, requiring mobile phone providers to collect monthly emergency 911 service fees

from their customers on behalf of the Commonwealth. Specifically, the parties dispute whether

TracFone Wireless, Inc. ("TracFone"), which provides prepaid wireless service primarily

through retail stores like Wal-Mart, was required to collect the service fees. The case presents

particularly difficult questions of statutory interpretation. Both parties have filed detailed and

expert briefs in support of their positions and the Court has heard oral argument in chambers.

The case is ripe for summary judgment.

## I.

To understand this case requires a knowledge of the workings of wireless telephone

services. Wireless services are primarily provided and billed for by two different methods:

postpaid and prepaid. A customer using a postpaid provider has a cell phone and receives a

monthly bill for the services she used during the preceding month. Traditionally, the customer

will pay a set amount for the use of up to a certain number of minutes and will pay additional

fees after the fact for any minutes used in excess of that set amount. In contrast, a customer

using a prepaid provider has a cell phone that is essentially "programmed" with a set number of minutes to be used, for which the customer has already paid. The customer's phone does not automatically renew those minutes after use or expiration and there is no monthly "bill" for use of the phone. Rather, if the customer wishes to use additional minutes, the customer must purchase those minutes in advance and "load" them onto her phone.

TracFone is a large, national provider of prepaid wireless service. It does not operate its own calling network, but rather, purchases the right to use other networks, such as AT&T, Verizon, or Sprint, and then sells prepaid minutes on those networks. The vast majority of TracFone's sales occur through third party retailers, such as Wal-Mart. Those customers purchase their phones in a retail store and contact TracFone, either online or by telephone, to activate the phones and prepaid minutes. At that time, the minutes are stored on the phone and TracFone requests that the customer provide her zip code, but does not request any additional information. Following activation, TracFone does not monitor or control the use of the prepaid minutes. As a general rule, the customer does not carry an "account" with TracFone and TracFone does not have any of the customer's payment information. If the customer wishes to add additional minutes to the same phone, she may purchase those minutes on a calling card at a retail store and load them onto her phone. A small number of customers purchase their phones and/or additional minutes directly from TracFone's internet website or direct sales telephone line. In 1998, the Kentucky legislature passed House Bill 673 (the "1998 Act") in response to a mandate from the Federal Communications Commission requiring all emergency 911 systems to service wireless callers. The 1998 Act established the Commonwealth of Kentucky Commercial Mobile Radio Service Emergency Telecommunications Board ("CMRS Board" or

"the Board") to develop an emergency 911 system for wireless customers. That system now allows any wireless user, including TracFone customers, to dial 911 from her cell phone and connect to the emergency dispatch system nearest her actual location regardless of her home address. In other words, if a customer from Louisville dials 911 from her phone while in Bowling Green, the system connects her to the emergency dispatch center in Bowling Green.

To pay for the creation and maintenance of the 911 system, the 1998 Act created the CMRS Fund, which was to be supported by a seventy cents per month service fee placed on all wireless customers. KRS § 65.7635 required wireless providers to collect that fee from their customers and remit the money to the Board. The original version of the statute reads:

(1)     Each CMRS provider shall act as a collection agent for the CMRS fund and shall, as part of the provider's normal monthly billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS connection to whom the billing provider provides CMRS. Each billing provider shall list the CMRS service charge as a separate entry on each bill which includes a CMRS service charge. If a CMRS provider receives a partial payment for a monthly bill from a CMRS customer, the provider shall first apply the payment against the amount the CMRS customer owes the CMRS provider.

(2)     A CMRS provider has no obligation to take any legal action to enforce the collection of the CMRS service charges for which any CMRS customer is billed. Collection actions to enforce the collection of the CMRS service charge against any CMRS customer may, however, be initiated by the state, on behalf of the board, in the Circuit Court of the county where the bill for CMRS service is regularly delivered, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

(3)     State and local taxes shall not apply to CMRS service charges.

(4)     To reimburse itself for the cost of collecting and remitting the CMRS service charge, each CMRS provider may deduct and retain from the CMRS service charges it collects during each calendar month an amount not to exceed one and one-half percent (1.5%) of the gross aggregate amount of CMRS service charges it collected that month.

(5)     All CMRS service charges imposed under KRS 65.7621 to 65.7643 collected by each CMRS provider, less the administrative fee described in subsection (4) of this section, are due and payable to the board monthly and shall be remitted on or before sixty (60) days after the end of the calendar month. Collection actions may be initiated by the state, on behalf of the board, in the Franklin Circuit Court or any other court of competent jurisdiction, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

KRS § 65.7635 (1999).

TracFone began selling wireless services in Kentucky sometime in 1999. Until November of 2003, TracFone remitted emergency 911 service fees to the CMRS Board, totaling approximately $764,000.[1] In November of 2003, TracFone learned that another state, and much of the wireless industry, interpreted similar statutes as not applying to prepaid providers. Thereafter, it notified the Board that it would no longer remit emergency 911 service fees.

According to the Board, it has consistently believed that prepaid providers must collect the service fees under the 1998 Act. Nevertheless, sometime in 2004, the Board began considering how to clarify the 1998 Act's collection method.[2] TracFone submitted an initial request that Kentucky adopt the average-revenue-per-user method of collection ("APRU method"), which the State of Tennessee used for a similar purpose. Under this method, a prepaid wireless provider divides its monthly revenue from business in Kentucky by $50.00, which is the monthly average revenue per user of major wireless carriers. That number is then multiplied by

---

[1] It appears that these fees were not specifically collected from customers as service fees. Rather, TracFone estimated an appropriate amount for the fees using a computer program and remitted the money from TracFone's general revenues.

[2] TracFone argues that the Board did not understand the 1998 Act to apply to prepaid providers. During this time period, the Board considered requesting an opinion from the Kentucky Attorney General regarding this issue. For unexplained reasons, one was never formally requested or provided.

the service fee and the resulting amount is remitted to the CMRS Board. For example, if

TracFone had revenues of $100,000 for a month, it would remit $1,400 in service fees.[3]

By 2005, the Board lobbied the Kentucky legislature to amend the 1998 Act to clarify

that prepaid providers are required to collect the service fees and to detail the proper methods of

collection. Legislation was proposed in 2005, but stalled in committee. Similar legislation was

again proposed in 2006, with the specific inclusion of the APRU method as a permissible

method of collection. However, by this time, TracFone had removed its support for the APRU

method and lobbied for a direct retailer method of collection, meaning that the end retailer of

prepaid phones and minutes, such as Wal-Mart, should collect the service fees. Eventually, the

amendments passed (collectively referred to as the "2006 Amendments") without a direct retailer

method of collection. In pertinent part, the 2006 Amendments read:

> (1)    Each CMRS provider shall act as a collection agent for the CMRS fund. From its customers, the provider shall, as part of the provider's billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS connection to whom the billing provider provides CMRS. Each billing provider shall list the CMRS service charge as a separate entry on each bill which includes a CMRS service charge. If a CMRS provider receives a partial payment for a monthly bill from a CMRS customer, the provider shall first apply the payment against the amount the CMRS customer owes the CMRS provider. For CMRS customers who purchase CMRS services on a prepaid basis, the CMRS service charge shall be determined according to one (1) of the following methodologies as elected by the CMRS provider:
>
> > (a)    The CMRS provider shall collect, on a monthly basis, the CMRS service charge specified in KRS 65.7629(3) from each active customer whose account balance is equal to or greater than the amount of service charge; or
> >
> > (b)    The CMRS provider shall divide its total earned prepaid wireless telephone revenue received with respect to its prepaid customers in the Commonwealth within the monthly 911 emergency telephone

---

[3] $100,000 divided by 50 equals 2,000. 2,000 multiplied by .70 (the service fee per user per month) equals 1,400.

service reporting period by fifty dollars ($50), multiply the quotient by the service charge amount, and pay the resulting amount to the board; or

(c)    In the case of CMRS providers that do not have the ability to access or debit end user accounts, and do not have retail contact with the end-user or purchaser of prepaid wireless airtime, the CMRS service charge and collection methodology may be determined by administrative regulations promulgated by the board to collect the service charge from such end users.

(2)    A CMRS provider has no obligation to take any legal action to enforce the collection of the CMRS service charges for which any CMRS customer is billed. Collection actions to enforce the collection of the CMRS service charge against any CMRS customer may, however, be initiated by the state, on behalf of the board, in the Circuit Court of the county where the bill for CMRS service is regularly delivered, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

(3)    State and local taxes shall not apply to CMRS service charges.

(4)    To reimburse itself for the cost of collecting and remitting the CMRS service charge, each CMRS provider may deduct and retain from the CMRS service charges it collects during each calendar month an amount not to exceed one and one-half percent (1.5%) of the gross aggregate amount of CMRS service charges it collected that month.

(5)    All CMRS service charges imposed under KRS 65.7621 to 65.7643 collected by each CMRS provider, less the administrative fee described in subsection (4) of this section, are due and payable to the board monthly and shall be remitted on or before sixty (60) days after the end of the calendar month. Collection actions may be initiated by the state, on behalf of the board, in the Franklin Circuit Court or any other court of competent jurisdiction, and the reasonable costs and attorneys' fees which are incurred in connection with any such collection action may be awarded by the court to the prevailing party in the action.

KRS § 65.7635 (2007).

Immediately following passage of the 2006 Amendments, TracFone notified the CMRS Board that it was electing "Option C" as its method of collection and requested an administrative rule authorizing a direct retailer method of collection. An attorney from the Board quickly

notified TracFone that its request was denied.  However, TracFone has presented significant evidence that representatives of the Board and Kentucky's Office of Homeland Security subsequently informed it that the letter was sent in error and its request was still under review. In its briefing and oral argument, the Board seems to acknowledge this.  In any event, the Board has yet to promulgate any administrative regulations or make any other official response indicating the proper collection methodology.

Prior to the filing of this lawsuit, TracFone did not remit any emergency 911 service fees to the Board under the 2006 Amendments.  Following commencement of the suit, TracFone began remitting service fees for the small percentage of its customers who purchased services directly from TracFone, using either its website or telephone sales line.  To this date, TracFone has not remitted any service fees for its customers who purchase services from third party retailers.  The CMRS Board asserts that TracFone is the only prepaid provider that refuses to remit payment for the service fees.

## II.

Statutory interpretation is the sole issue involved here.  Specifically, the Court must determine (1) whether TracFone was required to collect and remit service fees under the 1998 Act, and (2) whether TracFone is required to collect and remit service fees under the 2006 Amendments in the absence of a specific ruling from the CMRS Board regarding its election of "Option C."

The interpretation of these two Kentucky statutes is a purely state-law issue.[4]  The Court

---

[4] To a very limited extent, TracFone argues that the United States Constitution is implicated by the Commonwealth's proposed application of the statutes.  For the reasons explained below, the Court finds that the federal constitution is not implicated and only state law issues remain.

has a rather circumscribed role. It must either follow Kentucky's highest court's interpretation or predict how that court would interpret and apply the statutes. *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008). Thankfully, one Kentucky court has already considered the 1998 Act under nearly identical facts.[5] In *Commonwealth of Kentucky v. Virgin Mobile, U.S.A., L.P.*, No 08-CI-10857 (Jefferson Cir. Ct. March 25, 2010), the CMRS Board sought to collect unpaid service fees from Virgin Mobile, another national provider of pre-paid wireless services, under the 1998 Act. Virgin Mobile defended in much the same way TracFone defends here. In a thorough and thoughtful opinion, Jefferson Circuit Court Judge Kenneth Conliffe found that the 1998 Act clearly applied to prepaid providers and that Virgin Mobile must pay the overdue amounts. The Court finds Judge Conliffe's opinion to be a useful guideline for identifying the most important issues. With that in mind, the Court first considers the 1998 Act.

### A.

"The most commonly stated rule in statutory interpretation is that the 'plain meaning' of the statute controls." *Wheeler & Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 614 (Ky. 2004). Thus, the Court must begin its analysis with an examination of the statute's language. To that end, "an act is to be read as a whole, *i.e.* any language in the act is to be read in light of the whole act, not just a portion of it." *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456, 465 (Ky. 2004). Here, the primary provision in dispute reads as follows:

> Each CMRS provider shall act as a collection agent for the CMRS fund and shall, as part of the provider's normal monthly billing process, collect the CMRS service charges levied upon CMRS connections under KRS 65.7629(3) from each CMRS

---

[5] No Kentucky court has considered the issue with respect to the 2006 Amendments.

connection to whom the billing provider provides CMRS. Each billing provider shall list the CMRS service charge as a separate entry on each bill which includes a CMRS service charge. If a CMRS provider receives a partial payment for a monthly bill from a CMRS customer, the provider shall first apply the payment against the amount the CMRS customer owes the CMRS provider.

KRS § 65.7635(1). To understand this provision, one must understand some of its terms.

First, it only applies to "CMRS providers." Thus, the first critical question is whether TracFone is a CMRS provider. A "CMRS provider" is defined as "a person or entity who provides CMRS to an end user, including resellers." KRS § 65.7621(9) (1999). Everyone agrees that "CMRS" includes mobile phone services. There is no real dispute, then, that TracFone is a CMRS provider.[6] It clearly provides mobile phone services to its customers; when a customer purchases a TracFone product, she contacts TracFone to activate it and supply coverage. While TracFone may use other companies' "networks," that merely makes it a "reseller" of services, which is explicitly included in the term "CMRS provider."

Second, the CMRS provider merely acts as a "collection agent" that collects "service charges levied upon CMRS connections under KRS 65.7629(3)." KRS § 65.7635(1). For TracFone to be obligated to collect the fees, then, its customers must first be obligated to pay them. No doubt they are. The service charge applies to "each CMRS connection within the Commonwealth." KRS § 65.7629(3). A "CMRS connection" is defined as "a mobile handset telephone number assigned to a CMRS customer." KRS § 65.7621(6). "'CMRS customer'

---

[6] TracFone argues that it is not a CMRS provider for three reasons: (1) the word "prepaid" does not appear anywhere in the statute; (2) the sponsors of the statute had not heard of prepaid providers when the statute was passed; and (3) TracFone does not utilize monthly billing as a part of its business model. None of these reasons removes TracFone from the clearly broad scope of the definition of a "CMRS provider." The facts that the word "prepaid" is not in the statute and that its sponsors had never heard of prepaid cell phones are irrelevant. The statute defines "CMRS provider" without reference to any method of payment or business model. It was clearly written in broad terms to encompass all forms of cell phone providers. Likewise, while billing practices may be relevant to whether TracFone was obligated to collect the service fees, it is not relevant to whether TracFone was or was not a CMRS provider. Again, the definition of "CMRS provider" does not include any reference to the method of billing.

9

means a person to whom a mobile handset telephone number is assigned and to whom CMRS is provided in return for compensation." KRS § 65.7621(7). Each TracFone customer receives a "mobile handset telephone number" and cell phone service from TracFone. Therefore, they are "CMRS customers." KRS § 65.7629(3) levies the service charge on "each CMRS customer within the Commonwealth"[7] regardless of their method of purchasing such service.[8]

The statute clearly states that "[e]ach CMRS provider shall act as a collection agent for the CMRS fund . . ." KRS § 65.7635(1). Therefore, in light of the definitions examined, the statute, at its most basic level and in no uncertain terms, requires TracFone to collect the service fees from its Kentucky customers. This is the same conclusion that Judge Conliffe reached in *Virgin Mobile*. As Judge Conliffe stated, "it is clear that the Defendant is mandated to collect the fee in question from its customers. Any other interpretation would contravene the uniformity requirement of K.R.S. 65.7627."[9] This is a most reasonable analysis under the circumstances.

---

[7] TracFone collects the home zip code of each of its customers at the time of activation. Thus, it can easily determine which customers are "within the Commonwealth." In fact, since 2001 TracFone has submitted quarterly reports of its subscribers in each zip code to the CMRS Board pursuant to KRS § 65.7639.

[8] Although it is unnecessary to consider legislative intent in light of the plain meaning of the statute, the Court notes that finding TracFone's customers obligated to pay the service charges also comports with the clear intent of the statute. The CMRS fund was established to pay for the emergency 911 system. That system benefits all cell phone users, including TracFone customers. It makes sense, then, that the legislature wanted all cell phone users, including prepaid users, to pay the service fees.

[9] Under the 1998 Act, KRS 65.7627 provided, "The CMRS service charge shall have uniform application within the boundaries of the Commonwealth." As Judge Conliffe explained, if TracFone is not required to collect the service charge from its customers, then TracFone, and potentially its customers, would be treated differently than other CMRS providers, in violation of this statute.

**B.**

The 1998 Act, however, does not end with this clear provision requiring TracFone to

collect the service fees.  Rather, it goes on to prescribe a specific method of collection:

> Each CMRS provider . . . shall, *as part of the provider's normal monthly billing*
> *process*, collect the CMRS service charges levied upon CMRS connections under
> KRS 65.7629(3) from each CMRS connection to whom the *billing* provider provides
> CMRS. Each *billing* provider shall list the CMRS service charge as *a separate entry*
> *on each bill* which includes a CMRS service charge.

KRS § 65.7635(1) (emphasis added).  Without doubt, this statutory method of collection does

not comport with TracFone's chosen business model.  TracFone does not send its customers any

"bills," much less utilize a "normal monthly billing process."  Without a bill, there is no

document on which TracFone would logically "list the CMRS service charge as a separate

entry."  According to TracFone, reference to this explicit collection method must mean that the

statute applies only to postpaid cell phone providers who utilize traditional billing systems and

not to prepaid providers.

In addressing this confounding issue, Judge Conliffe looked to principles of statutory

construction for tax laws.[10]  He found that the prepaid provider's argument was the equivalent of

a request for an exemption from a generally applicable tax.  Under long-standing Kentucky law,

> [a] grant of exemption from taxation is never presumed; on the contrary, in all cases
> of doubt as to the legislative intention, or as to the inclusion of particular property
> within the terms of the statute, the presumption is in favor of the taxing power, and
> the burden is on the claimant to establish clearly his right to exemption.

*Martin v. High Splint Coal Co.*, 103 S.W.2d 711, 714 (Ky. 1937) (citation and quotation marks

omitted).  Therefore, Judge Conliffe determined that the statute's specific guidance on how to

---

[10] This Court agrees that the service fees are very similar to taxes and interpretation of these statutes should
be in line with the interpretation of tax statutes.  It appears that the parties join this analysis as each has
recommended a method of interpretation following general tax statute principles.

collect the fees, while admittedly in conflict with prepaid providers' chosen business model, did not clearly create an implicit exemption to the general duty to collect the service fee.

TracFone contends that Judge Conliffe's "exemption" analysis began from a faulty assumption, *i.e.* that the statute applied to TracFone at all. According to TracFone, it does not seek an exemption to a general obligation, but rather, an interpretation that the statute applies only to postpaid providers, not prepaid. Under a different principle of tax law, TracFone argues that any ambiguities in the statute should be construed in its favor, as the obligated party, and against the CMRS Board, as the taxing power.

TracFone is correct that, as a general rule, "it is the function of the judiciary to construe the [tax] statute strictly and resolve doubts and ambiguities in favor of the taxpayer and against the taxing powers." *George v. Scent*, 346 S.W.2d 784, 789 (Ky. 1961). However, as explained above, that rule does not apply where the legislature has specifically stated that the tax apply to the party in question and that party is actually seeking an exemption. *Id.* Judge Conliffe's analysis that our circumstances more properly fit in the latter category "threads the needle" of a difficult question as well or better than any this Court can devise. The clear intent and language of the statute requires "each CMRS provider," which would include TracFone, to collect the service fees from each customer to whom they provide service. To interpret the statute to apply only to post-paid providers would, indeed, create an exemption for prepaid providers. Because such an exemption is not clearly required by the statute's plain language, the Court cannot grant one.

**C.**

To be sure, Judge Conliffe's decision is not binding upon this Court. *Bradley v. Gen. Motors Corp.*, 512 F.2d 602, 605 (6th Cir. 1975). "However, th[e] court may give weight to the decision of a [state] trial court in determining what is the controlling law of [the state]." *Id.* That weight is considerable here because Judge Conliffe undertakes this difficult analysis in a convincing, well-reasoned and most thorough manner. Having considered the plain language of the statute and Kentucky's basic rules of statutory interpretation, this Court concludes that the Kentucky Supreme Court would quite likely follow Judge Conliffe's convincing analysis. Therefore, this Court's most prudent course is to follow it also.

**III.**

Although the Court sides with Judge Conliffe's opinion, it recognizes that TracFone has raised some legitimate counterpoints. However, none of those arguments have sufficient weight or logic to supplant Judge Conliffe's analysis. Though the 1998 Act's collection provisions are confusing, it remains clear that TracFone must collect the tax. For the reasons that follow, this Court believes that TracFone's arguments to the contrary will not persuade Kentucky's highest court.

**A.**

Perhaps TracFone's strongest argument that the 1998 Act did not apply to prepaid providers is that the statutes were amended in 2006 to specifically add language regarding prepaid providers. "[T]he presumption is that the legislature, by the amendment, intended to change the law." *Whitley County Bd. of Educ. v. Meadors*, 444 S.W.2d 890, 891 (Ky. 1969). According to TracFone, the 2006 Amendments only added language specifically applying the

collection duties to prepaid providers. However, TracFone makes too much of the change and the presumption. A closer examination of the amendments reveals that they only changed the method of collection, not the general collection obligation of cell phone providers.

The first sentence of the 2006 version of KRS § 65.7635 is identical to the 1998 version's first clause. Both read, "Each CMRS provider shall act as a collection agent for the CMRS fund." The definition of "CMRS provider" was largely unchanged, adding only the clarification that the term applies to both facilities-based resellers and non-facilities-based resellers.[11] KRS § 65.7621. None of the changes shows that the term "CMRS provider" did not previously apply to prepaid providers. Thus, the general obligation of all CMRS providers to collect fees remained unchanged. Rather, the 2006 Amendments changed only the permissible methods of collection. Consequently, the Court concludes that the 2006 Amendments do not suggest any change in the 1998 Act's general requirement that all CMRS providers, including TracFone, act as collection agents.[12]

This analysis complies with basic rules of statutory interpretation regarding amendments. "Courts determine the defects in the original act, which defect the legislature intended to cure, and then construe the amendment to reduce or eliminate the defect intended to be remedied." 1A

---

[11] "CMRS customer" and "CMRS connection" were also unchanged. The only change regarding the applicability of the fee was to note that, for prepaid customers, the fee is owed by those with a primary place of use in Kentucky (the same standard as the 1998 Act) and those with a Kentucky area code. Thus, the only change was to incorporate more CMRS connections (ones with Kentucky area codes), not to add a new classification of prepaid customers.

[12] The CMRS Board argues that the 2006 amendments represent merely a clarification that prepaid providers were obligated to collect the fees as well. The Court need not make such a finding. Rather, as explained, the plain language of the statute does not effect any change on the obligation to collect. The obligation remains the same - *all* CMRS providers must collect the service fees from all of their customers. However, the amendments do effect a change in the law; they change the permissible method of collection, adding new options to make it easier for prepaid providers to comply with the law while retaining the same business model.

Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* §22:31 (7th ed. 2009). The defect in the original statute was that the prescribed method of collection did not comport with prepaid providers' chosen business model. The amendments clearly, and explicitly, remedy that defect and no other.

**B.**

Next, TracFone argues that because its customers owe the service fee and no one collected any fees under the 1998 Act after 2003, the Board cannot now force TracFone to remit fees out-of-pocket. Such an interpretation, of course, would completely alleviate the CMRS provider of its obligation to collect and remit the fees. Clearly, the statute did not intend this result.

Moreover, such a result is contrary to the plain language of the statute, which requires providers collect and remit the fees to the Board. KRS § 65.7635(1). The only time a provider is not responsible for remitting a fee to the Board is where the provider has not collected charges "for which [the] CMRS customer is billed." KRS § 65.7635(2). Here, it is undisputed that TracFone simply made no effort to collect the fees after 2003. It seems illogical that TracFone could impose its own failure to attempt to collect the fees as a defense to its failure to remit.

**C.**

TracFone also contends that it could not collect the fee using the method the 1998 Act requires and, therefore, its compliance was impossible. It cites two reasons for this impossibility.

First, it argues that building the fee into its suggested retail price would violate KRS § 65.7635(3), which provides that "[s]tate and local taxes shall not apply to CMRS service

15

charges." TracFone sells the vast majority of its products through third party retailers. According to TracFone, if it built the fee into its suggested retail price, the retailers would automatically charge sales tax on the full retail price and, thus, would tax the fee. TracFone has presented nothing to suggest that it has attempted to work with retailers to collect the fee or determine a best method of doing so. Computer technology has assisted retailers to distinguish between products that have a sales tax and products that do not. TracFone has not convinced the Court that building the fee into its retail price without exposing customers to an unauthorized tax is a difficult, not to mention impossible, task.

TracFone's next argument is, again, premised on its business model. When a customer purchases a set amount of minutes for use, TracFone does not know if that customer will use those minutes over a week's time or several months. The service fee is seventy cents *per month*. Because TracFone does not know how long a phone will be used, it argues that it cannot know how much to collect from its customers. The Court recognizes that this presents some difficulty for TracFone. It is a difficulty, however, that again arises because of TracFone's business choices. Moreover, it is a difficulty that the Court is not convinced creates an impossibility. Put simply, TracFone's business choices do not alleviate its obligations under the statute.

TracFone asserts that it does not follow the use of its phones once they are activated and, therefore, does not know how long the customer uses the phone. This may be true.[13] However, TracFone does submit quarterly reports to the Commonwealth stating the number of its customers. Therefore, TracFone does, in fact, know how many customers are active and for how long they have been active. Based on such information and actuarial calculations, TracFone

---

[13] Of course, it does not contend that it cannot follow the use, only that it does not.

could likely calculate the average number of minutes its customers use in a month and collect the fee based on that average.[14]

## D.

For its next argument, TracFone contends that applying the 1998 Act to it would violate the Due Process and Equal Protection clauses of the federal constitution. These arguments are not persuasive.

With regard to the Due Process clause, TracFone claims that the statute is unconstitutionally vague and that it could not have known what was required of it. This argument largely refashions TracFone's previous arguments - *i.e.* that the statute is ambiguous and that it could not comply with the prescribed billing methods. Based on the above analysis, however, the statute clearly states that all CMRS providers, which includes TracFone, must collect the service fees. Furthermore, there is no evidence that compliance with that general mandate would have been genuinely impossible. Therefore, the due process claim fails.

The Equal Protection claim largely refashions TracFone's argument that the customer, not TracFone, is responsible for paying the fees. According to TracFone, requiring it to pay when it did not collect would treat it differently than the postpaid providers who did collect from their customers. This argument is also flawed. First, TracFone is not similarly situated to postpaid providers that billed for, and collected, the service fees from their customers. TracFone

---

[14] Of course, TracFone could develop other methods for collecting the fee that vary slightly from its business model. For example, a customer could be required to set up an account with a certain reserve of funds to pay for the fee so long as the phone is activated. If the customer discontinues use of the phone prior to the account being exhausted, the money would simply be refunded to the customer's account. If the customer's account is depleted and they wish to obtain additional use of the phone, they may be required to put additional monies into the account. TracFone could also bill its customers each month for the fee. While these methods do require a change to TracFone's business model and may create additional expense, those facts do not relieve TracFone of its statutory duties. It has not put forth evidence of an actual impossibility in compliance.

freely admits that it made no attempt to collect the service fees. Had the postpaid providers made no attempt to collect, they too would be liable for the fees out-of-pocket. Second, requiring TracFone to collect the fees actually treats all CMRS providers the same; it does not prejudice prepaid providers or advantage postpaid providers. If prepaid providers are not required to collect the fees, they would gain a competitive advantage over their postpaid rivals. Such an interpretation would violate KRS § 65.7627, which provides, "The CMRS service charge shall have uniform application within the boundaries of the Commonwealth."

## E.

Finally, TracFone contends that the Board's claims should be dismissed based on equitable grounds. First, it contends that the CMRS Board, despite knowing that litigation was possible, failed to implement a procedure to maintain records and destroyed many records of former board members. TracFone argues that this spoliation requires dismissal. Second, TracFone contends that the doctrine of laches bars any recovery by the Board because it failed to act in a reasonable and timely manner to ensure TracFone's compliance with the 1998 Act.

"Dismissal is the sanction of last resort." *Beil v. Lakewood Eng'g & Mfg. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). Moreover, the party claiming spoliation must show that the destroyed evidence was relevant to the issues in the lawsuit. *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). *See also McDaniel v. Transcender, LLC*, 119 Fed.Appx. 774, 782 (6th Cir. 2005) ("[I]t is a general rule that the intentional spoliation or destruction of evidence *relevant* to a case raises . . . an inference, that the evidence would have been unfavorable to the cause of the spoliator.") (emphasis added and quotation omitted). TracFone

has not shown that any destroyed documents contained relevant evidence.[15]  This is a case of statutory interpretation.  As a general matter, documentary evidence from either party would not impact the Court's analysis.  The Court is charged with examining the plain language of the statute and the legislature's intent in enacting it.  Put simply, TracFone has not shown that the destruction of any Board documents warrants such an extreme consequence as dismissal.

"The basis for the doctrine of laches is that neglect or omission to assert one's rights within a reasonable period of time, where it causes prejudice, injury, disadvantage or a change of position to the other party, will bar enforcement of that claimant's rights."  *Wigginton v. Commonwealth, ex rel. Caldwell*, 760 S.W.2d 885, 887 (Ky. Ct. App. 1988).  TracFone argues that it notified the Board of its interpretation of the 1998 Act in November of 2003 and that the Board's failure to bring this action prior to 2008 should bar its claims.  The Court disagrees.

TracFone has presented no evidence that it was prejudiced, injured, disadvantaged or made a change in its position based on the delay.  As explained, this case involves basic statutory interpretation.  Nothing in the delay has caused the destruction of any evidence related to that interpretation.  The Board never misled TracFone about its interpretation of the 1998 Act or its intention to seek remittance of the fees under it.  Without showing some prejudice by the delay, the doctrine of laches does not apply.  *See Plaza Condo. Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996).[16]

---

[15] The only possible exception would be statements made to TracFone, as they may reflect on its defense of laches.  However, TracFone has, or at a minimum had, possession of any such statements.  Therefore, there is no basis for finding that destroyed copies of those statements warrants dismissal.

[16] The Court's analysis with respect to spoliation and laches applies equally to TracFone's claims under the 2006 Amendments, which are discussed in Section IV.

**IV.**

The Court next considers the 2006 Amendments, which all parties agree require prepaid

providers to collect and remit the service charges. The only dispute is whether TracFone must

do so in the absence of an administrative ruling by the Board.

The relevant provision of the 2006 Amendments, which remains unchanged, provides,

> For CMRS customers who purchase CMRS services on a prepaid basis, the CMRS service charge shall be determined according to one (1) of the following methodologies as elected by the CMRS provider:
>
> (a) The CMRS provider shall collect, on a monthly basis, the CMRS service charge specified in KRS 65.7629(3) from each active customer whose account balance is equal to or greater than the amount of service charge; or
>
> (b) The CMRS provider shall divide its total earned prepaid wireless telephone revenue received with respect to its prepaid customers in the Commonwealth within the monthly 911 emergency telephone service reporting period by fifty dollars ($50), multiply the quotient by the service charge amount, and pay the resulting amount to the board; or
>
> (c) In the case of CMRS providers that do not have the ability to access or debit end user accounts, and do not have retail contact with the end-user or purchaser of prepaid wireless airtime, the CMRS service charge and collection methodology may be determined by administrative regulations promulgated by the board to collect the service charge from such end users.

KRS § 65.7635(1). Immediately after passage of the 2006 Amendments, TracFone notified the

Board of its election of "Option C" and requested an administrative regulation detailing how it

should determine and collect the fees. To this date, the Board has not responded.[17] The parties

dispute whether TracFone is required to collect the fees between the time it notified the Board of

its election of "Option C" and the time the Board advises it of the proper collection method. No

---

[17] The Board's attorney quickly notified TracFone that its specific request that retailers be required to collect the fees was rejected. TracFone argues, with significant evidence, that such a rejection was withdrawn and that the Board promised to consider its request. For the reasons explained below, the Court finds this factual dispute immaterial. What is important is that the Board issued no advice on the proper method of collection.

Kentucky court has considered this issue.

## A.

Prior to analyzing the central issue, the Court must consider an important prerequisite. "Option C" is not available to all CMRS providers. Rather, the CMRS provider must meet two criteria: (1) it "[can]not have the ability to access or debit end user accounts," and (2) it "[can]not have retail contact with the end-user or purchaser of prepaid wireless airtime." *Id.* The parties agree that TracFone meets the first requirement and, largely, meets the second. For its sales through third-party retailers, TracFone may elect "Option C." However, some of TracFone's sales are processed directly with the end-use customer, through either TracFone's website or retail phone line. For those customers, TracFone cannot elect "Option C." Yet, from the enactment of the 2006 Amendments until September of 2009, TracFone did not collect any fees from those direct customers. It offers no explanation or excuse for its failure. Because "Option C" was unavailable for those sales, TracFone was clearly obligated to collect the fees under Option A or B and is now liable for the past due fees for its direct customers.

## B.

Whether TracFone owes any uncollected service fees for its customers who purchased through third-party retailers is a more difficult, and closer, question. Without doubt, the 2006 Amendments apply to prepaid providers, including TracFone. Thus, in the abstract, TracFone is obligated to collect the fees. The dispute, once again, involves the prescribed method of collection.

As explained, the 2006 Amendments permit TracFone to chose its method of collection from three options. It chose Option C, which provides,

> In the case of CMRS providers that do not have the ability to access or debit end user accounts, and do not have retail contact with the end-user or purchaser of prepaid wireless airtime, the CMRS service charge and collection methodology may be determined by administrative regulations promulgated by the board to collect the service charge from such end users.

KRS § 65.7635(1)(c). Under this option, the proper method of collection "may be determined by administrative regulations promulgated by the board." *Id.* Two things are known: (1) the Board has not directed TracFone on the proper method of collection under Option C; and (2) TracFone has not remitted any service fees for its customers who purchase through third-party retailers since electing Option C. The issue is whether TracFone was obligated to collect under Option A or B while awaiting a response from the Board.

The Court begins its analysis with the language of the statute. *Wheeler &Clevenger Oil Co., Inc. v. Washburn*, 127 S.W.3d 609, 614 (Ky. 2004). Unlike the difficulties seen in the 1998 Act, the 2006 Amendments provide clear guidance on how prepaid providers should collect the service fees. "For CMRS customers who purchase CMRS services on a prepaid basis, the CMRS service charge *shall be determined* according to one (1) of the following methodologies *as elected by the CMRS provider*." KRS § 65.7635(1) (emphasis added). The statute then provides three options, known as Options "A," "B," and "C." As the statute clearly states, a provider need only select one of the three options and that selection *shall* determine the method of collection to be used. Under the unambiguous terms of the statute, the CMRS Board is bound by that selection and must accept remittance of the fees pursuant to the selected method. If a provider selects Option A, the Board cannot require the provider to collect under Option B. The provider needs only select one method of collection and follow it.

Based on the plain language of the statute, Option C must work the same way. Nothing

in the statute indicates that Option C is to be treated differently.  Rather, Option C is listed as a viable choice, just as are Options A and B.  The statute clearly requires a provider elect only "one (1) of the . . . methodologies." *Id.*  Once Option C is elected, the burden shifts to the CMRS Board to advise Tracfone, either by administrative regulation or other appropriate means, of the proper method of collection.  Any other reading of the statute would undermine the language of the statute that explicitly states that the "service charge shall be determined according to one (1) of the following methodologies as elected by the CMRS provider." *Id.*  There is simply no statutory support for the Board's proposition that, while awaiting advice on the proper method of collection under Option C, the provider must utilize either Option A or B to collect and remit fees.[18]

Therefore, upon its initial election of Option C, TracFone has no legal obligation under the 2006 Amendments to remit fees for its non-direct customers until the CMRS Board advises it of the proper method of collection.

## V.

Once again, the Court recognizes some merit in a different result.  The CMRS Board has advanced several strong arguments that TracFone was required to collect the service fees, even in the absence of advice from the Board.  However, as the following discussion demonstrates, none of these arguments change the Court's analysis.

### A.

---

[18] As explained more thoroughly below, the Board's advice may be that collection is required under Option A or B.  The Board appears to have wide discretion in determining the proper method of collection under Option C. If it determines that Option A or B is feasible and acceptable for the prepaid provider that elects Option C, it may be able to require collection under those methods, so long as it acts on the provider's election of Option C.  The Board's decision will then be judged against basic administrative law principles, such as the arbitrary and capricious standard of review.  The Court expresses no view regarding whether the Board's decision may have retro-active effect.

First, the Board points to the word "may" within the text of Option C and claims that its use allows the Board the option of not acting. Option C states, "the CMRS service charge and collection methodology *may* be determined by administrative regulations promulgated by the board to collect the service charge from such end users." KRS § 65.7635(1)(c) (emphasis added). As a general rule, "may" is given a permissive interpretation, meaning that it does not require action. KRS § 446.010(20). The Court disagrees with the Board's position that the use of "may" permits it simply to ignore the provider's clear election of Option C.

The use of the word "may" does present some interpretive difficulties, especially when it is read in context with the prior provision, which dictates that the "service charge *shall* be determined according to [the method] elected by the CMRS provider." The use of "shall" makes that provision mandatory. KRS § 446.010(29). Thus, as explained, the provider, not the board, chooses the collection option and the Board is bound by the choice. "Option C" does not dictate a specific method of collection, but rather, leaves the determination to the Board. In essence, Option C simply shifts the "selector" of the proper method of collection to the Board.

In that context, the use of "may" makes sense. The Board "may" promulgate an administrative regulation that provides a different method of collection than those offered by Options A and B; or, it "may" choose not to issue a new regulation. In such a case, it simply informs the provider that either Option A or B must be utilized. That is the risk that the provider takes by electing Option C.

The use of "may" definitively does not, however, permit the Board to simply ignore the provider's election of Option C. To do so ignores the use of "shall" in the statute's preceding provision. Furthermore, such an interpretation effectively rewrites the statute to excise Option

C. The plain language of the statute provides three options for providers. Initially at least, it is their choice, not the Board's, as to which option to choose. The Court is "not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Bd. of Educ. of Jefferson County*, 873 S.W.2d 575, 577 (Ky. 1994).

## B.

Second, the Board contends that it could not accept TracFone's proposal to require retailers to collect the fees and, therefore, its refusal to consider the request had no impact. True, the Board certainly had no obligation to accept TracFone's proposed rule. However, the provider has a statutory right to elect Option C. Once elected, the Board determines the proper method of collection, be it through a new regulation or other guidance. Until it does so, the provider cannot know the proper method of collection and has no obligation to guess.

This conclusion is further supported by the fact that a provider need not even propose a method under the statute. It can simply seek advice from the Board, under Option C, regarding the proper method of collection. Thus, the fact that TracFone's proposed methodology was beyond the Board's control does not change the analysis regarding TracFone's obligation to collect under Option C in the absence of administrative action.

Related to this last point, the Board argues that if it rejects a proposal under Option C, the provider will simply propose a new alternative that the Board cannot accept and will be able to continue avoiding collection of the fees. Certainly, this was not the legislature's intent. Nor is it the clear result of the Court's analysis.

The Court concludes that the Board must respond by advising the provider of the proper

method of collection. Once the provider is so advised, it can no longer refuse to collect on a theory that it does not know the proper method of collection under Option C; it has been directly instructed on the proper method of collection. Thus, if it proposes a new method of collection, which surely would be permissible, it cannot wait for a determination on that new method. Rather, it must follow the previous instruction of the Board until the Board changes that instruction. This is the most reasonable interpretation of the statute.

## C.

Finally, the Court recognizes some tension between its interpretation of the 1998 Act and its interpretation of the 2006 Amendments. Under the 1998 Act, the Court found that the general obligation to collect the fees outweighed any ambiguous language regarding the method of collection. Here, however, the Court has held that TracFone is exempt from the general obligation to collect because the Board has failed to advise it of the proper method of collection. One could easily wonder how the undefined method of collection relieves the general collection obligation under the 2006 Amendments but not under the 1998 Act. There is sound reasoning for the different treatment.

Under the 1998 Act, there were no options for alternative methods of collection. Rather, all providers were required to collect in the same manner. As explained above, TracFone sought an exemption from that requirement, one that was not clearly provided by the statute's plain language. The Court construed that request for an exemption against TracFone. The 2006 Amendments, on the other hand, provided prepaid providers with three options. TracFone exercised its statutory right to elect Option C. Thus, TracFone no longer seeks an implicit exemption; it seeks to follow the plain language of the statute. At best, the CMRS Board has

raised some potential ambiguities in that language. Because no implicit exemption is sought,[19] the basic statutory construction rules require those ambiguities be resolved in TracFone's favor. Thus, the different result under the different statutes is appropriate.

## VI.

The Court's opinion has considered only the issues of statutory interpretation and liability. Based on the preceding analysis, the Court finds that TracFone is obligated to remit service fees for the period of November 2003 through July 12, 2006, the effective date of the 2006 Amendments, for all of its customers and from July 12, 2006 through September 2009 for its customers that purchased services directly from TracFone. However, TracFone is not obligated to remit any fees under the 2006 Amendments for its non-direct customers until the CMRS Board directs it on the proper method of collection.

Several issues remain. The parties have not fully briefed, and the Court has not considered, the issue of damages. At this time, it is unclear whether the amount of service fees due will be disputed. If appropriate, the Board may make a new motion for summary judgment regarding damages. The Court also has not considered the issue of attorney fees, which may be granted to prevailing parties under KRS § 65.7635(5), or the issue of pre-judgment interest. Those issues may be raised and considered after the damages issues are resolved.

---

[19] TracFone readily admits that it is generally required to collect the service fees under the 2006 Amendments.

The Court will enter an Order consistent with this Memorandum Opinion.

cc:     Counsel of Record